FILED
JUN 1 0 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

EXHIBIT: R

**TUESDAY, MARCH 29, 2005**

**(A.M. SESSION)**

**(CIVIL MOTION CALENDAR CALLED):**

THE CLERK: Your Honor, this is 2004-3972, James Marcello vs. Nuno Neves.

MR. MORETTI: James Moretti for the defendants.

MR. MARCELLO: James Marcello, plaintiff, pro se.

THE COURT: This matter is before this Court with regard to the defendant's motion for summary judgment. Apparently there's some reference to a counter-motion filed by the plaintiff. Did you file a motion for summary judgment?

MR. MARCELLO: Yes, your Honor. I filed a consolidated motion, memorandum of law in opposition to the defendant's motion for summary judgment and in support of my motion for summary judgment.

THE COURT: I am not in receipt of any motion filed on behalf of the plaintiff, nor did our search of the Clerk's office reveal any, nor was it filed with an omnibus form to be scheduled for hearing today.

MR. MARCELLO: I have the proof of certified mail that the Court in fact received it and I have the copies of such to provide the Court for examination.

THE COURT: Did you ask for assignment to this calendar?

MR. MARCELLO: Yes, on the omnibus.

THE COURT: You received an omnibus form?

MR. MARCELLO: I attached it to the letter to the clerk. If I may approach the bench, your Honor. And I have the certified original receipts that the Court -- the defendant attorney and the defendant -- plaintiffs did in fact receive the said plaintiffs' motion.

MR. MORETTI: Your Honor, I do have receipt of that.

(DOCUMENTS HANDED TO COURT)

THE COURT: Did you receive, from the clerk, an assignment for hearing or did you just send in the form?

MR. MARCELLO: I -- and I am over four hundred miles away, outside of Bangor, Maine and I attached the summary judgment -- I attached the omnibus form to the clerk and I signed and dated it and I provided copies to the defendant attorney of the omnibus copy and I also made copies sent directly to the defendant parties of -- copy of the plaintiffs' motion of objection and in support of the motion for the summary judgment and the attached order then containing two hundred fifty-eight pages of evidence, documents, all by certified mail.

(PAUSE)

THE COURT: Okay, Mr. Marcello, I have taken the

opportunity to review all of your papers, namely the affidavit and memorandum of law in opposition to the defendants' motion for summary judgment and also in support of your cross-motion for summary judgment. I was not in receipt of those papers earlier because you did not transmit a copy directly to me as is required, nor did you obtain a formal assignment of your motion to the motion calendar for today. I know you requested that, but you never obtained that from the Court. You simply sent in all of these papers and expected that it would be proceed in that fashion. But nonetheless as it appears that you have properly served the motion and supporting documents on the defendants and I have now had an opportunity to review them and they speak largely to the issues previously raised in the defendants' motion for summary judgment, I am ready, having reviewed all of the papers, to proceed to decision unless either of you have anything briefly to add to your papers.

MR. MORETTI: Your Honor, I have nothing further.

MR. MARCELLO: Your Honor, I have not presented to you at this time the attached -- you have not inspected -- I have the necessary notarized affidavits in support of my motion and opposition to --

THE COURT: Have those been filed?

MR. MARCELLO: If I may present those -- yes, filed

before you on the same day and the copies were sent to the parties and also to the parties' attorney. If you care to --

THE COURT: Let me take a look at those.

(DOCUMENTS HANDED TO COURT)

THE COURT: These are the affidavits that are referenced in your memorandum, correct?

MR. MARCELLO: Yes.

THE COURT: Okay, let's mark all of these papers for the file.

(PAUSE)

THE COURT: Okay. Do you wish to add anything, Mr. Marcello, to the argument you put in writing? Anything new? Anything different?

MR. MARCELLO: If I may elaborate on the primary objection --

THE COURT: Go ahead.

MR. MARCELLO: The defense raises the grounds of res judicata as barring this action in reference to the Probate Court proceeding regarding my father's death. The grounds and objection from my position is this, that the doctrine of res judicata is not applicable on six essential bases. That number one, the Probate Court never had competent jurisdiction over my father's estate. My father was in fact insane and incompetent by

reason of Alzheimer's and Dementia over the last ten years of his life and he had died intestate leaving no valid will. Number two, the parties -- alleged parties before the Probate Court as the defendant has alleged in his papers are not the same parties in fact before this Court. Number two, the alleged issues in the Probate Court, as alleged by the defendant, are the same issues before this Court and on the Rhode Island case law that would support the doctrine of res judicata on void judgments would be Rhode Island case law, **Westerly Probate Court v. Potter**, indicating that if a party is not before the Court in probate proceedings and a judgment is entered, that judgment would be void. That statement would be in reference to the alleged probating of my father's will as alleged by the defendants on April 21, 2003, I believe.

The second primary ground is in reference to a sale of an estate. Despite the question of an executorship and having the power to sell in the will and also a will indicating that the Executor may not seek necessary authorization from a Probate Court or any -- any other party. Still the Rhode Island General Laws provides that a necessary authorization order from a Probate Court must be granted and that the power to sell in the will must assent to that authorization order. This

would include Rhode Island case law **Wood vs. Hammond.** The Rhode Island General Laws statute of authorizing the sale of property is referenced to Title 33-19-3, that the Probate Court may authorize the executor/administrator and guardian the sale of their estate based on the filing of a petition citing the necessity and the specific properties to be sold.

My uncle, Arthur T. Marcello, the surviving brother of my deceased father, had sold, without authorization of a Probate Court, the property to the defendants before this Court and lacking that necessary power, this confers no title in to the defendants. I am the sole child and heir of my father's estate. I had paid entirely the funeral out of my personal money, was merely five thousand dollars on his death. I had paid my father's only existing mortgage off of twenty-four thousand dollars, in its entirety, within two weeks from his death on October 17, 2002. I had released the lien. These things were all done prior to any probating of a will or even the necessity of an administration in a Probate proceeding. Subsequent to that, my Uncle Arthur T. Marcello had arranged some type of conspiracy to misuse of legal -- of law process in the District Court alleging that he was a landlord executor of my estate and by apparent corrupt measures he had ousted me out on

a void, default judgment. According to law, an eviction proceedings, when a notice to quit to the occupants is not signed by the alleged landlord and is attached to the complaint and filed, a default judgment entered on the face of the docket sheet, is entirely void and subsequent to that, it is insufficient to support any writ of execution ordering legal authority to any global authorities to oust that tenant.

What happened was this abuse had occurred on August 13, 2002 and the police had came to my premises and had literally thrown my wife and I out to the street and I was illegally held in prison for two weeks and during said time, Arthur T. Marcello had tried to make arrangements with these defendants to sell my father's estate to them. However, in law, when a person dies intestate, it is no longer existence of an estate. It is now -- the title is now invested within the heirs and that property in reality is mine, the plaintiffs, on the day of the death of my father occurring on September 28, 2002. Subsequent to my release, I had returned to the premises and on October 14, 2003, the defendants came to my property by surprise and I had informed him of the fact of who I was and my intentions of keeping my property inheritance and I showed them numerous documents relating to identification of myself, my

father and deeds and indicating to them that there was no dispute as to who I am and the existence of my interest in the property. They had by some type of guilty measure quickly ran down the driveway. Subsequent to that, they left and Arthur T. Marcello then filed a second conspiracy to misuse of process in the Superior Court of Providence, Rhode Island. And then ousted me again without any supporting law and without any due process of law involved. This ouster occurred on December 10 of 2003. I was illegally held, incarcerated for ninety days in prison, alleged civil trespass. During such time, Arthur T. Marcello made this alleged perpetrated sale to the defendants in February of 2004. Subsequent to that sale, I was then released on March -- excuse me, that would be February 28, 2004, approximately, March 1st 2004. Subsequent to my release, your Honor, I had filed this action in July of last year. I had filed documents of lis pendens giving notice to the parties here and notice to the world that in the event that they do sell this property and try to escape these judgments or what have you, or whatever may happen, that a purchaser, stranger may be bound by an adverse judgment in my favor in this action.

During that period of July of 2004 and on, Arthur T. Marcello was setting up this a type of a straw man,

an account in the appearance in the competitor account executor of the estate of my father and he was sending money, checks to my four children who are the grandchildren of my deceased father. And without their knowledge, they had accepted these proceeds not knowing that there was a question of fraudulent sale and a question of the authority of Arthur Marcello selling these premises.

In law, your Honor, Rhode Island case law -- I don't have my papers in front of me -- I am sorry. **Tiffany v. Babcock,** that an adverse possession -- to be ousted out by the non-owner may be clearly open, hostile to the world that this happened on December 10th. The second time in fact, the year, 2003 and then it says in that law, that when a deed -- a grantee who enters into the premises under the warranty deed subsequently to this ouster. This deed is evidence of a dissension as I had a claim alleging adverse possession in my original complaint. That would be Rhode Island case law of **Tiffany v. Babcock.**

At this present time, I have not ratified, accepted any proceeds, nor have I confided in anyway or participated in any of this sale transaction. I have outright refused and I had filed a civil lawsuit in the U.S. District Court of the State of Rhode Island for

conspiratorial claims against my constitutional right, under Section 42 U.S.C., Section 1983 being denied without due process of law. I have provided in my papers the strength of my title. That I am an only child and I have no brothers or sisters without to share in common with. I have also provided the deeds of the chain of title from my grandparents, Jennie and Peter Marcello, the natural parents of my deceased father, the quit claims of my grandmother quitting claim in 1968 quitting her rights to my father only, Nicholas Marcello. Then I provided the quit claim deeds of grandchildren subsequent to my grandfather's death in 1974 where they all had quit their right and granted them to my father.

Also provided in my complaint that I had filed an estate deed and filed it on June -- excuse me, July 8 of 2003 in the Land Records giving some indication and notice to the world that there is a person interested in this property. The law also cites, your Honor, that the mere fact that the defendants, Mr. And Mrs. Neves, when they met me at my property in question on October 14, 2003, this is actually a notice as in the form of a legal notice filed prior to their buying -- the sale bearing on the question of being a bona fide purchaser. It is equivalent to such law that I cited in my

documents. I have alleged that the defendants are not bona fide purchasers. That they had committed fraud and covenant with the perpetrated executor, Arthur T. Marcello and they have arranged some type of a sales agreement subject to the ratification process or acceptance of any proceeds from these invalid wills and invalid course of the proceedings. The Neves twice had tried to buy this property and I can see the first time being in question of being an innocent purchaser, but not on the second time when this was clear evidence, face to face, how I was at the premises.

So, in support of my objection, as I am limited today, I ask that the defendants' motion for summary judgment may be denied.

Thank you, your Honor.

MR. MORETTI: Your Honor, I just want to point out that the Probate orders speak for themselves, attached as exhibits. Also, I would like to bring to your attention, Judge Clifton's orders of December 19, 2003. It is not in the record anymore and documents in this property, the chain of title and it has been done pursuant to this case. Your Honor, the brief is very straight forward and appended to his complaint and curiously have deeded the property to himself with an estate -- I don't know what effect that has at all. I

think referenced in his argument to you. And finally, I believe in talking about privity, which the defendants clearly have that the estate conveyed this property to them and they closed. That is attached to the exhibits also, your Honor when he says res judicata does not apply.

THE COURT: Okay, let me proceed to decision. You may each have a seat if you like.

Nicholas Marcello (the decedent) died testate on September 28, 2002. The decedent's will was admitted for probate and an Order was entered by the Barrington Probate Court. **See Defendants' Memorandum, Exhibit G.** In that Order, the decedent's brother, Arthur Marcello (hereinafter "the Executor") was appointed executor of the estate. **Id.** Thereafter, the Executor sold property owned by the estate at 557 Maple Avenue, Barrington, Rhode Island to defendants Nuno C. Neves and Natalia Paiva-Neves.

At the time of the sale, the decedent's brother and a named beneficiary in the decedent's will, plaintiff James C. Marcello, was residing at the property. The plaintiff filed a motion with the Probate Court in which he sought to set aside the sale of the property on the grounds that the sales price obtained was inadequate. **See Defendants' Memorandum, Exhibit H.** However, the

Probate Court entered an Order denying the plaintiff's motion and approving the First and Final account submitted by the executor. Id.

Despite the Probate Court's Order and the estate's sale of the property, the plaintiff refused to vacate the premises. As a result, the estate brought an eviction action against the plaintiff. **See Defendants' Memorandum, Exhibit I.** The plaintiff failed to appear at trial and a judgment was entered on behalf of the estate. **Id.** Ultimately, on August 5, 2003, an execution for trespass and eviction was issued demanding that the plaintiff leave the property. The plaintiff apparently resisted his removal from the property and was allegedly arrested and charged with disorderly conduct and obstruction of justice, thus removing him from the property. Thereafter, the plaintiff attempted to re-enter the property, apparently resulting in felony proceedings against the plaintiff.

In their brief, the two defendants make reference to the criminal proceeding against the plaintiff. However, they have not submitted any record of those proceedings with the instant motion.

The estate subsequently sought to enjoin the plaintiff from re-entering the property. On December 19, 2003, Justice Clifton entered an Order granting the

estate's request for a preliminary injunction. **See Defendants' Memorandum, Exhibit K.** Pursuant to that order, the plaintiff was enjoined and restrained from re-entering the property. The plaintiff was also enjoined and restrained from filing any documents in the Land Evidence Records of the Town of Barrington purporting to grant him title to the property. Despite this Order, on December 20, 2004, the plaintiff filed a notice of lis pendens with respect to the property. **See Defendants' Memorandum, Exhibit L.**

The plaintiff also filed a complaint pro se in which he alleges that he is the rightful owner of the property. The plaintiff contends that on two occasions, August 13, 2003 and December 12, 2003, he and his wife were tortiously evicted and disseised from the property. Presumably, the plaintiff is referring to the enforcement of the execution previously described. The plaintiff also contends that the defendants are in wrongful possession of the property. The plaintiff seeks to have the current occupants, the defendants, ejected from the property. The plaintiff also seeks $10,000.00 from the defendants for pain, suffering and damages.

The defendants have filed a motion for summary judgment with supporting memorandum and exhibits and

also object to the plaintiffs counter-motion for summary judgment.

The defendants argue that the estate's right to transfer the property has already been adjudicated by the Probate Court. The defendants assert that the Probate Court's Order is not subject to collateral attack by the plaintiff in this matter. Furthermore, the defendants contend that the plaintiff's claim are barred by res judicata.

The plaintiff has objected to the defendant's motion for summary judgment and filed a cross-motion for summary judgment and supporting memorandum and exhibits and affidavits. Plaintiff argues that he is the rightful owner and title holder of the property in question and that the sales of the property and his ouster and incarceration were illegal and the product of a conspiracy.

As previously noted by this Court, the plaintiff during the course of the Probate Court proceedings contested the admission of his father's will for probate. The will was nonetheless admitted in Probate Court and plaintiff never appealed that order of the Probate Court. The Executor then sold the property pursuant to the power of the sale clause and at hearing in the Probate Court on May 2004, plaintiff as

previously indicated, sought to set aside the sale because the sale price was too low and that motion was denied.

Pursuant to Rhode Island General Laws Section 33-23-1, any person aggrieved by an order or decree of the Probate Court may appeal to the Superior Court by filing an appeal and certified copy of the claim and the record of the proceedings within twenty days after execution of the order or decree of the Probate Court. The Judge of the Probate Court entered an order that admitted the will to probate and the time period for filing an appeal passed. Any claim that the plaintiff had title or an ownership interest in the property before became finally adjudicated, and the Probate Court Order is not subject to the collateral attack and is barred by the doctrine of res judicata. (**George v. Infantolino, 446 A.2d. 757 (1982); Pratt v. Pratt, 431 A.2d 405 (1981).**

And, in addition, to the extent plaintiff seeks to litigate issues that could have been litigated in the Probate Court action, but were not, those claims under the doctrine of res judicata are also barred where there is privity, by virtue of the Rhode Island Supreme Court authorities of **ElGabri v. Lekas, 681 A.2d 271 (1996)** and **Audet & Sons v. Firemen's Fund Insurance, 635 A.2d.**

**1181.** As such, the plaintiff essentially litigated this matter in the Probate Court and had the opportunity there to raise the issues of ownership of the property that he raises in this action in the Superior Court and the matter became adjudicated and not appealed and remains binding.

In addition, the plaintiff's complaint has been brought pursuant to the Rhode Island General Laws Section 34-20-2 entitled "Actions to recover possession - Right of entry" which states "in actions to recover possession of lands, tenements, or hereditaments, the plaintiff shall not be required to prove an actual entry under his or her title; but if he or she proves entitlement to an estate in the premises, whether as heir, devisee, purchaser, or otherwise, and proves a right of entry therein this shall be deemed sufficient proof of his or her seisin, as alleged in the complaint; but no action shall be maintained unless the plaintiff has, at the time of commencing the same, a right of entry into the premises".

Rhode Island General Laws Section 34-0-2 (emphasis added). It is clear from the documentation submitted by the defendants that at the time this litigation was commenced, the plaintiff did not have a right of entry into the property. Indeed, the plaintiff was enjoined

from entering the property -- again, based on orders of the Court that were not further appealed or contested by the plaintiff.

For all of these reasons, the defendants' motion for summary judgment is granted.

MR. MORETTI: Thank you, your Honor.

THE COURT: If counsel could have an order consistent with this Court's decision within the next week.

MR. MARCELLO: It is my intention to appeal that order, your Honor, for the record.

THE COURT: So noted.

MR. MORETTI: Thank you, your Honor.

MR. MARCELLO: Thank you, your Honor. Your Honor, I have not a copy of -- myself of the documents that I presented to you. Would this be bizarre -- would this deprive the Court of the record? I could copy and re-send the motion that I presented to you to view. It is right here.

THE COURT: I filed those documents. Do you wish to make copies of them?

MR. MARCELLO: Are you returning those documents to me, your Honor?

THE COURT: No. I am putting them in the Court file because --

MR. MARCELLO: Yes.

THE COURT: -- because you asked for them to be considered to be part of the record of the proceedings.

MR. MARCELLO: I have not a second copy for myself.

THE COURT: Well, we can make arrangements for you to copy them in the Clerk's office, but the original needs to be retained.

MR. MARCELLO: All right. I guess I will have to discuss that with the Clerk's office --

THE COURT: So keep them here. Let me finish the calendar and then they can be made available to you in the Clerk's office for copying.

MR. MARCELLO: Yes, your Honor.

THE COURT: Okay.

MR. MARCELLO: Thank you.

(END OF ABOVE-ENTITLED MATTER HEARD ON SAID DATE)

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

| | | |
|---|---|---|
| JAMES C. MARCELLO | : | |
| VS. | : | PC #2004-3972 |
| NUNO C. NEVES and NATALIA PAIVA-NEVES | : | |

Transcript of **Arguments and Decision** on the **Defendants' Motion for Summary Judgment** rendered in the above-entitled matter by **MS. JUSTICE JUDITH C. SAVAGE** in the Providence County Superior Court on **Tuesday, March 29, 2005 (A.M. Session).**

**APPEARANCES:**

JAMES C. MARCELLO, pro se

JAMES MORETTI, ESQUIRE..............FOR THE DEFENDANTS

**CERTIFICATE**

I, LISA L. KELLY, do hereby certify that the succeeding pages, Pages 1-19, inclusive are a true, accurate and complete transcript of my stenographic notes taken before **Ms. Justice Judith C. Savage** in the Providence County Superior Court in the matter of **James C. Marcello vs. Nuno C. Neves and Natalia Paiva-Neves; PC #2004-3972.**

Said transcript contains the **Arguments and Decision** on the **Defendants' Motion for Summary Judgment** rendered in the above-entitled matter on **Tuesday, March 29, 2005 (A.M. Session).**

**LISA L. KELLY,**
**Certified Court Reporter**